# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 5270 | **DATE** | 9/19/2003 |
| **CASE TITLE** | Phyllis Griffin, et al vs. Elaine Roupas, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    ENTER MEMORANDUM OPINION AND ORDER: the Court grants Defendants' Rule 12(b)(l) and Rule 12(b)(6) motions to dismiss as to all counts. This case is hereby terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| | Notices mailed by judge's staff. | | SEP 2 2 2003 | | 19 |
| | Notified counsel by telephone. | | date docketed | | |
| ✓ | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | | | |
| TBK | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 03 SEP 22 PM 6:10 | date mailed notice Date/time received in Central Clerk's Office | mailing deputy initials | |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |  |
|---|---|---|
| PHYLLIS GRIFFIN, LORE KNUTSTRUM, JULIET ALEJANDRE, KAREN FORT, and VERONICA WILLIAMS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Judge Ronald A. Guzman |
| ELAINE ROUPAS, Chair, WANDA L. REDNOUR, Vice Chair, DAVID E. MURRAY, JOHN KEITH, PHILIP R. O'CONNOR, WILLIAM M. MCGUFFAGE, JESSE SMART, and ALBERT PORTER, in their official Capacities as members of the Illinois State Board of Elections, | ) ) ) ) ) ) ) ) | 02 C 5270 |
| Defendants. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Phyllis Green, Lore Knutstrum, Juliet Alejandre, Karen Fort, and

Veronica Williams ("Plaintiffs") have sued the Defendants Elaine Roupas, Chair, Wanda

L. Rednour, Vice Chair, David E. Murray, John Keith, Philip R. O'Connor, William M.

McGuffage, Jesse Smart, and Albert Porter, in their official capacities as members of the

Illinois State Board of Elections ("Defendants" or "Board members"). Plaintiffs are

seeking a declaratory judgment that the Illinois Election Code, 10 ILCS 5/17-1 et seq.

(the "Election Code"), is currently in violation of the fundamental right to vote under the

Fourteenth and Nineteenth Amendments pursuant to 42 U.S.C. § 1983 ("§ 1983") due to

its failure to allow for absentee voting for persons in Plaintiffs' circumstances or all

person. *See* U.S. CONST. amend. XIV; U.S. CONST. amend XIX. Plaintiffs have

1



claimed denial of an equal opportunity to vote under § 1983 and the Equal Protection Clause (Count I); abridgement of the right to vote on the basis of sex under § 1983 and the Fourteenth and Nineteenth Amendments (Count II); equal protection to vote for hourly workers under § 1983 and the Fourteenth Amendment (Count III); the right to an informed vote under § 1983 and the Due Process Clause (Count IV); and the right to safeguards of the integrity of the ballot (Count V). Plaintiffs are also seeking preliminary and permanent injunctive relief requiring that the Defendants develop and submit to this Court a plan for a system that would, ensure a meaningful opportunity to vote for Plaintiffs, remedying various violations of the right to vote, and to do so in a way that does not have a discriminatory impact based on race or gender. Plaintiffs claim jurisdiction by 28 U.S.C. § 1331 for purposes of injunctive relief, and 28 U.S.C. § 2201 for purposes of declaratory relief.

Defendants have moved to dismiss Plaintiffs' claims pursuant to Fed. R. Civ. P. ("Rule") 12(b)(1) and 12(b)(6). For the following reasons, the Court grants the motion to dismiss pursuant to Rule 12(b)(1) and Rule 12(b)(6) as to Counts I-V.

## FACTS

Plaintiffs are five women who are Illinois residents and registered voters in their respective counties. (Amend. Compl. ¶ 6-10.) Plaintiff Griffin is an African-American, working, single mother with sole child care responsibility for her two children, including a disabled son with special medical needs. *(Id.* ¶ 6, ¶ 19-20.) She has a very full day that normally lasts from around 8:30 a.m. until 7:00 p.m. or 10:00 p.m. at the latest. *(Id.* ¶ 21-22.) To vote at the polls on election day, she would have to take time away from work or her children and other responsibilities. *(Id.* ¶ *23.)*

Plaintiff Knutstrum is a working mother with child care responsibilities for her three young children. *(Id. ¶ 7, ¶ 26.)* She is married and shares her child-care responsibilities with her husband who also works up to fourteen hours a day as a podiatrist. *(Id. ¶ 27.)* To vote on election day, she must reduce her schedule and number of patients, as must her husband. *(Id. ¶ 28.)* During the last election, she felt stressed and tense during the elections because she had to finish voting in time to take care of her children. (Id. *¶ 29.)*

Plaintiff Fort is a working mother with two children. *(Id. ¶ 8, ¶ 33.)* She shares her child-care responsibilities with her husband but handles the majority of the child-care responsibility. *(Id. ¶ 34.)* Plaintiff Fort works from about 1:00 p.m. to 10:30 p.m. and uses the morning to spend time with her children and do errands. *(Id. ¶ 35-36.)* In order to vote on election day, she would have to forego morning time with her children or an errand. *(Id. ¶ 37.)*

Plaintiff Alejandre is a working mother with one child. *(Id. ¶ 9, ¶ 41.)* Before she was married, she was a single mother of a three year old, as well as a college student who worked part-time. *(Id. ¶ 41.)* Trying to vote at the polls with her son with her, she found the polls were not child-friendly and felt rushed, nervous, and stressed trying to watch over her child and vote at the same time. *(Id. ¶ 42.)* According to her, the experience led her not to vote in subsequent elections and primaries. *(Id. ¶ 42.)*

Plaintiff Williams is a single mother with the sole child-care responsibility for her one child while attending college. *(Id. ¶ 10, ¶ 46.)* While now unemployed, she nb worked previously as an hourly wage earner from 9:00 a.m. to 5:30 p.m. or from 1:30 p.m. to 10:30 p.m.. *(Id. ¶ 47.)* If she took time off work to vote when she was an hourly

wage earner, she would not be paid during the time she took off to vote. *(Id.* ¶ 49.)

Further, she would not feel comfortable trusting someone she did not know to watch her

daughter at the polling place and thus would be unable to concentrate while voting. *(Id.*

¶ 49.)

## The Voting Process

In accordance with the provisions of the Election Code, 10 ILCS § 5/17-1 et

seq., Defendants conduct elections by means of in-person voting at polling places and in

precincts as established by the various county election boards of Illinois. *(Id.* ¶ 11-12.)

10 ILCS § 5/19-1 et seq. provides that voting by absentee ballot is available if a voter

meets the established criteria for one of the eight specified "excuses". *(Id.* ¶ 13-14; *see*

10 ILCS § 5/19-1 et seq.) Plaintiffs do not meet the criteria to vote by absentee ballot.

(Amend. Compl. ¶ 13-14.)

The statutory provisions for absentee ballot voting allow a voter who "who

expects to be absent from the county in which he is a qualified elector" to request an

absentee ballot. *(Id.* ¶ 15; *see* 10 ILCS § 5/19-1 et seq.) Plaintiffs allege that this

particular excuse is arbitrary as it allows voters with daily commutes shorter than some

of Plaintiffs to vote absentee because of county lines. (Amend. Compl. ¶ 15.) Plaintiffs

further state that the ambiguous standards of what constitutes being absent from the

county for the purposes of obtaining absentee ballots have resulted in thousands or more

voters being in doubt over their eligibility. *(Id.* ¶ 16.) Additionally, Plaintiffs claim that

the Defendants make no systematic effort to enforce 10 ILCS § 5/19-1 et seq., and thus

"honest" voters such as Plaintiffs are penalized, while other voters request an absentee

ballot as a matter of course, regardless of whether they meet the established criteria. *(Id.*

¶ 17.) Therefore, Plaintiffs contend that the Election Code, as administered by Defendants, gives thousands of Illinois registered voters like Plaintiffs no significant opportunity to vote at the polls, or places an unreasonable burden on their right to vote, in that Plaintiffs have difficulty getting to the polls to vote in person. *(Id.* ¶ 18.)

## DISCUSSION

Pursuant to Rule 12(b)(1) and Rule 12(b)(6), Defendants seek to dismiss Count I (Section 1983 and Equal Protection: Denial of Equal Opportunity to Vote); Count II (Section 1983 and the Fourteenth and Nineteenth Amendments: Abridgement of Right to Vote on the Basis of Sex); Count III (Section 1983 and Fourteenth Amendment: Equal Protection to Vote for Hourly Workers); Count IV (Section 1983 and Due Process: Right to an Informed Vote); and Count V (Right to Safeguards of the Integrity of the Ballot) of Plaintiffs Amended Complaint.

### I. Motion to Dismiss and § 1983

In considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), or for failure to state a claim under Rule 12(b)(6), the court must accept Plaintiffs' well-pled factual allegations as true and draw reasonable inferences therefrom in the plaintiffs favor. *Afsharzadehyadzi v. Perryman,* 214 F. Supp. 2d 884, 886 (N.D. Ill. 2002) (citing *Transit Express, Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir. 2001)). A court may dismiss a complaint for failure to state a claim only if "it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957); *Hondo, Inc. v. Sterling,* 21 F.3d 775, 777 (7th Cir. 1994).

A plaintiff who seeks relief under § 1983 must establish that (1) the alleged conduct was committed by a person acting under color of state law; and (2) that this conduct deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Yasak v. Retirement Bd. of the Policemen's Annuity & Benefit Fund of Chicago,* No. 02 C 251, 2003 U.S. Dist. LEXIS 3080, at *7-8, 2003 WL 742188, at *3 (N.D. Ill. Mar. 4, 2003) (citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970)).

## II.     Equal Protection and the Fundamental Right to Vote

It has been established beyond question that there is a fundamental right to vote. *Dunn v. Blumstein,* 405 U.S. 330, 336, 31 L. Ed. 2d 274, 92 S. Ct. 995 (1972); *Burdick v. Takushi,* 504 U.S. 428, 433, 119 L. Ed. 2d 245, 112 S. Ct. 2059 (1992). "[V]oting is of the most fundamental significance under our constitutional structure *Illinois State Bd. Of Elections v. Socialist Workers Party,* 440 U.S. 173, 184; 99 S. Ct. 983; 59 L. Ed. 2d 230. Thus, the United States Supreme Court has held that when such vital individual rights are at stake, such as voting, a State must establish that its classification is necessary to serve a compelling interest. *Id.* at 185. Before the burden passes to the State, however, in order to sustain an equal protection claim, Plaintiffs must establish that there is either a classification system or when considering a facially neutral law, that there is a discriminatory purpose, as well as a disproportionate impact imposed upon by the Election Code. *Id.* at 185; *Washington v. Davis,* 426 U.S. 229, 242, 48 L. Ed. 2d 597, 96 S. Ct. 2040 (1976). Illinois law permits absentee voting, but Plaintiffs' claim is that those laws are too narrow, because these Plaintiffs are not eligible to vote by absentee ballot for the reasons they assert as hardships. Plaintiffs ask this Court to find that the Illinois

election law on in-person voting and absentee voting violate the Constitution and to require Illinois, by way of mandatory injunction, to develop and submit to the Court a plan for different voting rules–such as a "no excuse absentee ballot" or the "all-mail" ballot similar to that used by the State of Oregon. In this case, Plaintiffs are unable to demonstrate a classification system that violates the Fourteenth Amendment, nor can they show a discriminatory purpose or disproportionate impact sufficient to sustain their claims.

In particular, with regard to the fundamental right to vote, the Supreme Court has more recently endorsed a "flexible standard" over strict scrutiny. *Burdick,* 504 U.S. 428, 434, 119 L. Ed. 2d 245, 112 S. Ct. 2059 (1992). Drawing upon its holding in *Anderson v. Celebreeze,* 460 U.S. 780, 75 L. Ed. 2d 547, 103 S. Ct. 1564 (1983), the Court held that:

> A court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Id.* In *Burdick,* the Supreme Court held that Hawaii's complete prohibition of write-in voting did not unreasonably infringe on the First and Fourteenth Amendments. *Id.* at 441. The rigorousness of a court's scrutiny depends upon the extent to which a challenged regulation burdens Fourteenth Amendment rights. *Id.* Thus, when such rights are subjected to "severe" restrictions, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Norman v. Reed,* 502 U.S. 279, 289, 116 L. Ed. 2d 711, 112 S. Ct. 698 (1992). However, when a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon Fourteenth Amendment

rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions. *Anderson,* 460 U.S. at 788.

### a. Absentee Voting

Despite the established principle that the right to vote is a fundamental one, there is no corresponding fundamental right to vote by absentee ballot. *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807; 22 L. Ed. 2d 79, 89 S. Ct. 1404 (1969). The Supreme Court has recognized that "[i]t does not follow, however, that the right to vote *in any manner* ... [is] absolute." *Burdick,* 504 U.S. at 433; *see also Dunn,* 405 U.S. at 336 (emphasis added). The Constitution provides that States may prescribe "the Times, Places and Manner of holding Elections for Senators and Representatives," Art. I, § 4, cl. 1, and the Supreme Court therefore has recognized that States retain the power to regulate their own elections. U.S. CONST. art. I, § 4, cl. 1; *Burdick,* 504 U.S. 428; 112 S. Ct. 2059; 119 L. Ed. 2d 245. It has long been held that the states' powers to determine the conditions under which the right of suffrage may be exercised broadly, so long as they do not do so in a discriminatory manner. *McDonald,* 394 U.S. at 807. The courts have held that the Constitution does not prohibit the States from enacting laws which incidentally burden election laws in order to ensure their integrity. *Burdick,* 504 U.S. at 433.

> "Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic process."

*Id.* (quoting *Storer v. Brown,* 415 U.S. 724, 730, *39 L.* Ed. 2d 714, 94 S. Ct. 1274 (1974)); *see Krislov v. Rednour,* 226 F.3d 851, 859 (7th Cir. Ill. 2000); *Toledo Area AFL-*

8

*CIO Council v. Pizza,* 154 F.3d 307, 325 (6th Cir. 1998) ("Because elections must be regulated to remain free from fraud and coercion, some latitude is given to regulations designed to serve these purposes."); *Pope v. Williams,* 193 U.S. 621, 632, 633, 48 L. Ed. 817, 24 S. Ct. 573 (1904) (residency restriction upheld); *Campbell v. Buckley,* 203 F.3d 738, 743 (10th Cir. 2000) (the state's "title setting" requirement was facially neutral and reasonably justified); *Winters v. Ill. State Bd. of Elections,* 197 F. Supp. 2d 1110, 1113 (N.D. Ill. 2001) (tie-breaking election provision did not violate the Equal Protection Clause as it failed to create a classification and was rationally related to a legitimate state interest of redistricting).

Plaintiffs contend that it is not the right to vote by absentee ballot that they assert is being violated, but the right to vote itself. (Pl. Mem. Law Opp. Defs.' Mot. Dismiss at 9.) In particular, Plaintiffs complain there is no provision for absentee voting for the individuals who will be in their home countries on election day and are too busy to go to the polls. To support this claim, Plaintiffs rely upon *O'Brien v. Skinner,* 414 U.S. 524 (1974), where the Supreme Court held that legislation that denied the right to an absentee ballot to an otherwise qualified group of voters operated as a restriction which was "so severe as itself to constitute an unconstitutionally onerous burden on the . . . exercise of the franchise." *O'Brien,* 414 U.S. at 530, quoting *Rosario v. Rockefeller, 410 U.S. 752, 760 (1973).* Plaintiffs in *O'Brien* were pre-trial detainees and others being held within their respective counties, and who possessed no legal disability otherwise impeding their right to vote. *Id.* at 525. However, in *O'Brien,* the State of New York denied the right to vote by absentee ballot only to those persons being held *within* their respective counties, and similarly situated persons being held *outside* their registered counties could make use

of the absentee ballot. *Id.* Thus, the Court held that the classification was so arbitrary as to constitute infringement upon the right to vote itself. *Id.* at 530. In this case, a different interpretation of the statute at issue could arguably make it easier for the Plaintiffs to exercise their right to vote. However, the current interpretation does not otherwise deny them the opportunity to exercise it completely. Thus, as there is no interpretation of the law at issue that otherwise denies Plaintiffs the right to vote, the issue properly framed is whether Plaintiffs have a right to vote by absentee ballot that is presently infringed under the Equal Protection and Due Process clauses of the Fourteenth Amendment, the Nineteenth Amendment, and Plaintiffs' right to safeguard the integrity of the ballot.

### III. Requirements of a Fourteenth Amendment Equal Protection Claim

In determining whether Illinois Election Code, as administered by Defendants, violates the Equal Protection clause of the Fourteenth Amendment, the court must examine the character of the classification in question, the importance of the individual interests at stake, and the state interests asserted in support of the classification *Illinois State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 182; 99 S. Ct. 983; 59 L. Ed. 2d 230. Because it is the right to vote by absentee ballot that is at issue in this case, which is not a fundamental right, strict scrutiny does *not* automatically apply. *McDonald*, 394 U.S. at 807. Of the three classification systems alleged by Plaintiffs-between those who expect to be absent from their respective counties (Count I), gender (Count II), and as hourly workers (Count III)-only discrimination on the basis of gender (working mothers with child-care responsibilities) requires an intermediate level of scrutiny rather than merely a rational relationship. *Craig v. Boren*, 429 U.S. 190, 50 L. Ed. 2d 397, 97 S. Ct. 451 (1976). Classifications on the basis of gender are constitutional

10

if substantially related to an important governmental objective. *Id.* However, in this case, the absentee ballot provisions of the Election Code are facially neutral. *See* 10 ILCS § 5/19-1 et seq. Thus, Plaintiffs must show a discriminatory purpose, as well as disproportionate impact in order to trigger a raised level of analysis. *Washington*, 426 U.S. at 242. Although for purposes of Defendants' motion to dismiss, allegations in the complaint are accepted in a light most favorable to the plaintiff, the fact that Plaintiffs admit that Plaintiff Knutstrum's husband has equal difficulty in scheduling time to vote raises serious doubts about the disproportionate impact upon working mothers that the Election Code has. (Amend. Compl. ¶ 27.) Plaintiffs have further failed to cite any discriminatory purpose of the Election Code to support an equal protection claim on the basis of gender (Count II).

With regard to Counts I and III, discrimination against those who have long commutes yet do not travel outside their respective counties and against hourly workers, the rational basis test applies. "The distinctions drawn by a challenged statute must bear some rational relationship to a legitimate state end and will be set aside as violative of the Equal Protection Clause only if based on reasons totally unrelated to the pursuit of that goal." *McDonald*, 394 U.S. at 809. The rational basis test is satisfied only if no grounds can be conceived to justify the statutory classifications at issue. *Id.* The Court can easily conceive of numerous reasons why the Illinois legislature chose to permit voting by absentee ballot to persons who expect to be absent from their respective counties and not others. Those within their respective counties are logically most likely to be nearer their polling station than others or because there must be some distinction between those eligible on the basis of geographic location, etc.

With regard to discrimination against hourly workers, because the statute is facially neutral on this point, Plaintiffs must show a discriminatory purpose, as well as disproportionate impact in order to trigger a raised level of analysis. *Washington*, 426 U.S. at 242. Plaintiffs, on this issue, again have difficulty demonstrating a disproportionate impact on any one group, as Plaintiffs as a group come from all income levels and allege equal difficulty in making it to the polls on election day. Plaintiff Knutstrum's circumstances directly counter-balance Plaintiff Williams', because as a self-employed physician, Knutstrum schedules her own hours as a manager or other salaried worker might have the luxury of doing. As alleged in the complaint, Knutstrum (and her husband) find it exceptionally difficult to vote on election day and would have to sacrifice by scaling back their practice to do so on election day. (Amend. Compl. ¶ 28.) Thus, Plaintiffs have failed to state an equal protection claim upon which relief can be granted for Counts I and III.

Even if the right to an absentee ballot is considered under the umbrella of the fundamental right to vote, the "flexible standard" test is satisfied. A State's important regulatory interests are generally sufficient to justify a restriction if a state election law provision imposes only "reasonable, nondiscriminatory restrictions" upon the Fourteenth Amendment rights of voters. *Burdick*, 504 U.S. at 434. As discussed above, Plaintiffs experience extraordinary difficulty in demonstrating Fourteenth Amendment violations under traditional equal protection analyses, as the Election Code and its absentee provisions are facially neutral and thus easily satisfies the rational basis test. Further, a state legislature has traditionally been allowed to enact reforms "one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative

mind." *Williamson v. Lee Optical of Oklahoma, Inc.,* 348 U.S. 483, 489 (1955). Incremental progress is evidenced by the fact that in 1969, the Illinois Election Code failed to allow absentee ballots to those serving on juries within the county of their residence. *McDonald,* 394 U.S. at 810.

## IV. Due Process and a Right to an Informed Vote

The Court is aware of no case law that sets forth a fundamental right to voting in a manner described by the Plaintiffs or as a corollary to any rights under the Fourteenth Amendment. Where there is no fundamental right at issue, a facially neutral statute and no disproportionate impact, the rational basis test applies. *San Antonio Independent Sch. Dist. v. Rodriguez,* 411 U.S. 1, 111, 36 L. Ed. 2d 16, 93 S. Ct. 1278 (1973). In Count IV, Plaintiffs assert that because they have a fundamental right to vote, they necessarily have a right to vote in an informed, deliberate, and careful manner. (Amend. Compl. ¶ 86.) Plaintiffs have claimed that by administering and entering the in-person voting provisions of the Illinois Election Code that the Defendants have acted and will continue to act under state law to deprive Plaintiffs of a right to vote in such a manner as guaranteed by the Fourteenth Amendment in violation of 42 U.S.C. § 1983. Arguing that in attempting to vote, Plaintiffs may find that they need written material which they may have forgotten but which they cannot return home to get, Plaintiffs cannot complete the ballot carefully. *(Id.* ¶ 87.) Because of the conditions of such in-person voting Plaintiffs maintain that they are deprived of voting in an informed, deliberate, and careful manner and that only voting by mail or absentee ballot would solve this problem. *(Id.* ¶ 88.)

Further, as there is no precedent on this issue, the due process considerations of the Fourteenth Amendment with regard to a challenge to a state's election laws may also

be considered under the "flexible standard" test. *Burdick,* 504 U.S. at 433. For similar reasons, the Court rejects the notion that Plaintiffs have a severe burden placed upon them by the current Illinois election laws and finds that the Illinois legislature's decision to restrict absentee voting is a reasonable exercise of their power to regulate elections. Plaintiffs should be lobbying Illinois' legislature for the reform they seek.

### V.     Standing and Count V (Right to Safeguards of the Integrity of the Ballot)

Plaintiffs lack proper standing to bring a cause of action such as Count V due to their failure to allege an actual harm threatened or suffered. In Count V, Plaintiffs have claimed a right under the Fourteenth Amendment to an "undiluted and equal right to vote, and as a corollary right that the Defendants provide effective safeguards for the integrity of the ballot." (Amend. Compl. ¶ 91.) Plaintiffs assert that Defendants have a reciprocal duty under the Fourteenth Amendment to take certain measures, at a minimum, to prevent fraud, when Defendants know or should know that fraud is occurring. *(Id.* ¶ 92.)

To have standing, a plaintiff must allege a personal injury rather than a generalized grievance. *Allen v. Wright,* 468 U.S. 737, 751, 82 L. Ed. 2d 556, 104 S. Ct. 3315 (1984). In order to satisfy the Article III standing requirements, the plaintiff must show that he personally has "suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant." *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 70 L. Ed. 2d 700, 102 S. Ct. 752 (1982) (quoting *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 99, 60 L. Ed. 2d 66, 99 S. Ct. 1601 (1979)). In other words, a plaintiff must allege (1) an injury in fact; (2) that is fairly traceable to the defendant's challenged conduct; and (3) that is

14

likely to be redressed by a favorable decision. *Lewis v. Continental Bank,* 494 U.S. 472, 477 (1990); *Plotkin v. Ryan,* 239 F.3d 882, 884 (7th Cir. 2001). Being simply a voter and a citizen does not satisfy the standing requirement. *U.S. v. Hays,* 515 U.S. 737, 743, 132 L. Ed. 2d 635, 115 S. Ct. 2431 (1995).

Plaintiffs appear to be alleging that some voters obtain absentee ballots when they are not eligible to do so. However, Plaintiffs have not provided any specifics for these vague and speculative allegations. The complaint is void of any facts to support their general theory of voters lying to get ballots. Plaintiffs allege nothing in Count V that raises any valid Constitutional issues as to their right to vote. Because Plaintiffs have not asserted any cognizable injury such as a diluted vote they lack standing sufficient to bring Count V.

## CONCLUSION

For the foregoing reasons, the Court grants Defendants' Rule 12(b)(1) and Rule 12(b)(6) motions to dismiss as to all counts. This case is hereby terminated.


SO ORDERED

ENTERED: 9/19/03

Ronald A. Guzman
United States Judge

15